

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF CALIFORNIA

FILED

07 DEC 13 PM 12: 28

'07 MJ 2892

DEPUTY

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>  Plaintiff,<br><br>  v.<br><br>1) Jesus ESCOBAR-Gutierrez,<br>2) Alejandrino ALEMAN<br>3) Victor Manuel ARREDONDO-Guzman<br>4) Johnny PULIDO<br>  Defendant(s) | Magistrate Case No.<br><br>COMPLAINT FOR VIOLATION OF:<br><br>Title 8 U.S.C., Sec. 1324 (a)(1)(A)(ii)<br>Transportation of Illegal Aliens |

The undersigned complainant, being duly sworn, states:

On or about **December 12, 2007**, within the Southern District of California, defendants **Jesus ESCOBAR-Gutierrez, Alejandrino ALEMAN, Victor Manuel ARREDONDO-Guzman, and Johnny PULIDO** with the intent to violate the immigration laws of the United States, knowing and in reckless disregard of the fact that aliens, namely, **Sandro SALCIDO-Valle, Carlos QUIROZ-Rivera, and Felix ENCISO-Cuella** had come to, entered and remained in the United States in violation of law, did transport and move, said aliens within the United States in furtherance of such violation of law; in violation of Title 8, United States Code, Section 1324(a)(1)(A)(ii).

And the complainant further states that this complaint is based on the attached statement of facts, which is incorporated herein by reference.

SIGNATURE OF COMPLAINANT
James E. Bailey
Senior Patrol Agent

SWORN TO BEFORE ME AND SUBSCRIBED IN MY PRESENCE, THIS **13**th DAY OF **DECEMBER 2007**

Barbara L. Major
UNITED STATES MAGISTRATE JUDGE

CONTINUATION OF COMPLAINT:
1) Jesus ESCOBAR-Gutierrez, 2) Alejandrino ALEMAN,
3) Victor Manuel ARREDONDO-Guzman, 4) Johnny PULIDO

## PROBABLE CAUSE STATEMENT

Furthermore, the complainant states that, **Sandro SALCIDO-Valle, Carlos QUIROZ-Rivera**, and **Felix ENCISO-Cuella** are citizens of a country other than the United States; that said aliens have admitted that they are deportable; that their testimony is material, that it is impracticable to secure their attendance at the trial by subpoena; and they are material witnesses in relation to this criminal charge and should be held or admitted to bail pursuant to Title 18, United States Code, Section 3144.

On December 12, 2007 Border Patrol Agents assigned to anti-smuggling operations were performing duties in the Brown Field Border Patrol Stations area of operations. The agents were in plain clothes and operating unmarked service vehicles outfitted with emergency equipment, lights and siren. At approximately 8:30 a.m. Sector dispatch relayed a report that a citizen observed a group of possible illegal aliens run across a field and load into a green Chevrolet pick-up bearing California license plates near State Route 94 and Rancho Jamul Estates. This area is located approximately 3 miles west of the State Route 94 Border Patrol checkpoint. The area of the citizen's report is notoriously used by smuggling organizations as a load up spot for illegal aliens that have circumvented the Border Patrol checkpoint. This location also has a small overpass that allows the illegal aliens to conceal themselves for an extended amount of time. The citizen reported that the pick-up proceeded westbound on SR 94 towards Rancho San Diego. The anti-smuggling agents responded to the citizen's report from multiple locations to the pick-up's anticipated route of travel.

At approximately 8:40 a.m. uniformed Border Patrol Agents W. Vanderhorst and R. Booth who were operating a marked DHS pursuit vehicle observed a pick-up matching the description heading west on SR 94 approaching College Avenue. Believing that the vehicle was involved in alien smuggling the agents attempted a vehicle stop on the pick-up. The vehicle failed to yield and after a few minutes the agents terminated the pursuit as the pick-up proceeded westbound on SR 94 toward Interstate 805 (I-805). Anti-smuggling agents then took up surveillance of the vehicle.

Agents E. Penagos and L. Gutierrez observed the pick-up as it passed their location on SR 94 near Federal Boulevard. The agents were able to see a brown blanket covering up something in the open bed of the pick-up. The blanket was not tied down but appeared to be held in place by the suspected illegal aliens to help keep them concealed. The agents maintained surveillance of the vehicle as it traveled westbound toward I-805. While maintaining surveillance the agents observed a second vehicle that appeared to be traveling in tandem with the pick-up. A black Chevrolet Monte Carlo with California license plates, occupied by a single male using a cell phone, matched the pick-up's every move. The agents kept both vehicles under surveillance.

The pick-up made an unsafe lane change from the number 2 lane of SR 94 and exit at 28th Street. The Monte Carlo attempted the same maneuver but almost struck a vehicle on the off ramp to 28th Street. The Monte Carlo now was separated from the pick-up by the surveillance agents between them but continued to follow the pick-up's and the agents' every move. The pick-up made a left hand turn at 28th Street followed by a right hand turn on to Island Street. The Monte Carlo followed the exact direction of travel as the pick-up and agents. The pick-up then made a left turn onto 26th street and another onto K Street where it stopped in the middle of the street, again followed by the agents and then the Monte Carlo.

**CONTINUATION OF COMPLAINT:**
1) Jesus ESCOBAR-Gutierrez, 2) Alejandrino ALEMAN,
3) Victor Manuel ARREDONDO-Guzman, 4) Johnny PULIDO

The agents approached the pick-up on foot and secured the driver, defendant Jesus ESCOBAR-Gutierrez. As the Monte Carlo came to a stop the agents approached it and identified themselves as Border Patrol Agents to the driver, defendant Johnny PULIDO, and conducted an investigation. Seven people were found in the cab of the pick-up and four were lying in the bed. All were queried as to their immigration status All subjects, except defendant PULIDO admitted to being citizen's of Mexico illegally present in the United States. Defendant PULIDO admitted that he was a citizen of the United States. Based on defendant PULIDO's actions while the pick-up was under surveillance, he was believed to be involved in the same activity with the pick-up truck. Defendant's ESCOBAR and PULIDO were arrested for alien smuggling. The other ten occupants of the pick-up were taken into service custody for being present in the United States without admission and all transported to Chula Vista Border Patrol Station for processing.

At the station record checks revealed that the pick-up truck was registered to the driver of the Monte Carlo, defendant PULIDO. An inventory of the pick-up revealed a cell phone hidden under the seat that was left on. The phone had a call history that revealed a call to a cell phone found in defendant PULIDO's possession.

Defendants Alejandrino ALEMAN and Victor M. ARREDONDO-Guzman were identified as foot guides through interviews with the people in the pick-up truck.

**STATEMENT OF DEFENDANT JESUS ESCOBAR-GUTIERREZ:**

Defendant ESCOBAR was advised of his rights as per the Miranda Warning. The defendant understood his rights and agreed to be interviewed without representation. The defendant admitted that he is a citizen of Mexico illegally present in the United States. The defendant stated that he entered the United States about a week ago and was taken to Los Angeles, California. He could not get in contact with his family to pay for his smuggling fee. He was then taken back to San Diego and was told he was going to be sent back to Tijuana. The defendant stated that he was told that if he would drive for them, they would waive his smuggling fee. The defendant agreed.

The defendant stated that on today's date he was transported to a Chevron gas station at an unknown location. The defendant was given the keys to the green Chevrolet pick-up. He followed the vehicle that dropped him off, a Ford F150, to the pickup point. There several people got into the cab of his truck and in the bed. The defendant was then to follow the F150 back to the load house. The defendant received a phone call from the cell phone and was told that the Border Patrol was following him. The F150 sped up and the defendant was unable to follow him. The defendant could see the lights and siren of the Border Patrol trying to pull him over. The defendant stated that he was told via radio not to stop because Border Patrol could not follow him.

The defendant saw a black vehicle following him and recognized the driver, defendant Johnny PULIDO. **Jesus ESCOBAR-Gutierrez** had seen PULIDO at the load house were he was being held. The defendant stated that he got off the highway and received a radio call to get back onto the freeway. The defendant was unsure who was calling him by radio, the driver of the F150 or PULIDO. Jesus ESCOBAR-Gutierrez identified PULIDO as the individual he saw at the load house from a photo lineup.

**CONTINUATION OF COMPLAINT:**
1) Jesus ESCOBAR-Gutierrez, 2) Alejandrino ALEMAN,
3) Victor Manuel ARREDONDO-Guzman, 4) Johnny PULIDO

### STATEMENT OF DEFENDANT ALEJANDRINO ALEMAN:

The defendant ALEMAN was advised of his right as per the Miranda Warning. The defendant understood his rights and agreed to be interviewed without representation. The defendant admits that he is a citizen and national of Mexico illegally present in the United States.

When questioned as to his involvement in this smuggling event defendant ALEMAN stated that he met a man in Tijuana who told him he would get paid $200.00 USD per alien if he agreed to guide them into the United States. The defendant stated that the drop off house is located near a bridge. The defendant admitted that he and another person in the group guided the group through the mountains west of the port of entry at Tecate, California. It was very cold during their trek through mountains and the group was left without food after the first day. The defendant stated there was a child approximately 8 years old with them in the group. It took about two days to reach their pickup point.

The defendant and the group and got into the green Chevrolet pick-up. He rode in the front passenger seat. The driver, defendant ESCOBAR, told him they were being followed to which the defendant replied; "You're driving, you make the call." The driver then said, "I'm not stopping." The defendant stated that the driver was on the phone with someone while the driver was trying to elude the Border Patrol.

The defendant identified the driver as defendant ESCOBAR through a photographic lineup.

### STATEMENT OF DEFENDANT VICTOR M. ARREDONDO-GUZMAN:

Defendant ARREDONDO was advised of his rights as per the Miranda Warning. The defendant understood his rights and agreed to be interviewed without representation. The defendant admitted to being a citizen of Mexico illegally present in the United States. The defendant states that he met an unknown individual in Tijuana and made arrangements to be smuggled to Los Angeles, California. The defendant stated that he was to pay a smuggling fee of $1500.00 USD. The defendant stated that the unknown individual said to him, if he would help the foot-guide with the group he would give him a discount. The defendant agreed to the deal. The defendant stated that he would carry water and would just listen to the instructions the foot-guide would give him.

### STATEMENT OF DEFENDANT JOHNNY PULIDO:

Defendant Johnny PULIDO was advised of his rights as per the Miranda Warning. The defendant understood his rights and agreed to be interviewed without representation. The defendant stated that he is a United States citizen. The defendant admitted that on December 12, 2007, while driving he received a call from his boost phone. The call was made from someone in the load vehicle informing him that they were being followed. The defendant admitted that he was following the unmarked Border Patrol Units during the surveillance but, he didn't know why.

1) Jesus ESCOBAR-Gutierrez, 2) Alejandrino ALEMAN,
3) Victor Manuel ARREDONDO-Guzman, 4) Johnny PULIDO

## MATERIAL WITNESSES STATEMENTS:

Material witnesses Sandro SALCIDO-Valle, Carlos QUIROZ-Rivera, and Felix ENCISO-Cuello each admitted to being citizens of Mexico illegally present in the United States. All agreed in summary to the following; All made arrangements with an unknown smuggler to get them to the Los Angeles, California area for fees that amounted to $1600.00 USD each. They were taken to the mountains near Tecate, California where two foot-guides told them climb the fence. They walked all night. The foot guides instructed them when to hide, run and keep quiet. One of the smuggled aliens was continually talking to the foot-guide. They finally arrived at an unknown area near a paved road. The waited near the road for approximately thirty minutes before load vehicle picked them up. Someone yelled for the men to get in the bed of the truck and let the women get into the cab. The foot-guides got into the cab as well.

The driver took off and began to drive very fast and make hard turns. Material witness QUIROZ believed that the truck could flip over easily because of the excessive speed. All material witnesses identified defendant ALEMAN as their foot guide. Material witness SALCIDO identified defendant ARREDONDO as the alien who was constantly talking to the foot-guide. Material witness QUIROZ identified defendant ARREDONDO as the other foot-guide. These defendants were identified by the material witnesses through photographic lineups.